Curia, per

Butler, J.
The ground taken for a writ of prohibition is, that the magistrates and freeholders assumed to decide upon the relation of landlord and tenant, as existing between John McCool and the relator, without receiving such evidence as the relator offered, and which he alleges the court had no legal right to refuse: or, in other terms, the court assumed the power of dispensing with such legal evidence as the relator had a right by law to introduce, to shew that he was not, at the time, the tenant of the applicant, but that he had a right to retain his possession by virtue of his tenancy to others, either under his original undertaking, or by his subsequent attornment to the true owners of the land, after the expiration of the lease under which he had entered. There is a wide difference between the different modes of bringing up cases for review and revision from inferior tribunals to the courts of superior jurisdiction ; and they ought not to be confounded from a desire to do justice in one forum when it should be applied for in another. The true office of a writ of prohibition is, not to enable the superior courts to correct mere errors of judgment, as may be done on motions of appeal, — where appeals are allowed, — or by a writ of cer-tiorari ; but to restrain the usurpations of inferior tribunals, and to compel them to observe the limits of their *114 jurisdiction : and I am willing to concede, as incident t© such a control, that the superior courts have a right to require of such inferior tribunals, that they shall observe the fundamental principles of the laws of the land, in the forms of their proceeding, or in the mode of administering their derivative authority. That is, they will not be allowed to adopt a mode of proceeding peculiar to the civil law or ecclesiastical jurisdictions, in opposition to the established course of the common law. They cannot, for instance, get evidence, by coercing the parties to testify ; nor receive the opinions of individuals for the testimony of witnesses. Nor can they dispense with the evidence of the witnesses themselves, by substituting the written statement of a third person, who may have written down what he had heard witnesses say, when not under oath. These would be assumptions of authority contrary to established, and generally recognized, principles of the common law. The quotation from Com. Dig. Prohibition, (F 13.) goes' thus far and no farther. It is there said : “ So a prohibition lies, if another court determines by improper evidence; as if the commissioners of appeals for the excise determine by minutes of the evidence taken by a justice of peace, and do not examine witnesses viva voce” In such a case the writ would go to restrain the judgment, until the regular course had been pursued, — upon the ground that a judgment without evidence is without authority. There also may be cases where prohibition might go to restrain the enforcement of a judgment, until an inferior court would hear proper evidence. Such cases would,, however, be surrounded with many embarrassing difficulties, and I can find none such in the books. In all the cases supposed, the writ would go upon the ground that the inferior court had assumed to dispense with rules of acknowledged law, or had refused to obey its authority. But in no case will such a writ as this issue for an erroneous application of the recognized principles of law. Inferior tribunals cannot be made amenable in this way for mere errors of judgment within their conceded jurisdiction. In the case before the court it is not pretended that the magistrate and freeholders received improper evidence, *115 or in any wise assumed to decide in defiance of law. They seemed to have refused to receive the evidence, which it is alleged had been offered, upon the ground that such evidence, if received, could not alter their judgment on the matter then in controversy. The question was, as to the relation of landlord and tenant; and having come to the conclusion, from written evidence, that the relator entered upon the land as the tenant of MeCool, they came to the conclusion, in the exercise of a judicial judgment, that it was not competent for him to dispute his landlord’s title. There is no reason to suppose that their judgment would have been changed upon hearing the' evidence. It was in the power of the relator to present the principle of law which his counsel now contends, for, to wit, that after the expiration of the landlord’s title; the tenant is not bound to restore the possession to him, but may attorn to another; Suppose the inferior court were to refuse to recognize the proposition, — and surely they would have a right to form their own opinion, — is there any way to compel them to alter their judgment by a writ of prohibition ?
But, further to illustrate my remarks, suppose we were to grant this application, and to restrain the decision of the court until the evidence offered had been received, and the court, on another trial, were to receive the evidence, but notwithstanding, were to determine that although Me-Cool was the agent of his mother, and although other persons, at his mother’s death, had bought the interest of the distributees or devisees, still the privity of contract was between MeCool and the relator ; could we interfere to compel the court to abide by and respect the evidence ? If so, we would assume the province of dictating the ub tímate decision. The truth is, the magistrates and freeholders came to a conclusion on the law, and regarded it as unnecessary to receive further evidence. Another case may be presented, by way of illustration. Suppose an inferior tribunal had jurisdiction of contracts without appeal, and a case were to come before it involving the statute of frauds — and such court were to come to the conclusion, that it was a contract that should have been in writing, and were to decline to receive parol evidence, believing it *116 immaterial, as it could not change the nature of tbe contract, could we compel them to receive such evidence for the purpose of changing their judgment on a question of law 'l I apprehend not.
It was suposed, in argument, that the question in this case had been ruled in the case of the State vs. Hudnall, 2 N. & McC. 419. It seems that the writ went, in that case, mainly on the ground that unauthorized individuals had undertaken to try a case of life arid death, and their judgment was, therefore, properly restrained. Judge Gantt remarks also, that the court had departed from the known and acknowledged rules of the common law, by admitting, against the accused, illegal testimony. But it is not held that the court was bound to hear all the evidence that had been offered of a legal character. To receive illegal evidence, and to refuse to receive legal evidence, are essentially different things. The one may do mischief, whilst the other might have no influence on the mind when received. There may be great objections to the one, whilst there might be none to the other. As a matter of discretion, I think we should be cautious how we interfere in such a case as this. The relator is a mere tenant, and he would have been excusable in re-delivering the possession to the person from whom he got it. In favoring the claims of others, he may be doing right, but as the tribunal below has decided otherwise, 1 think we should respect its decision. At any rate, I am averse to interfering with it in this form of proceeding. The relator, and those for whose title he is contending, may have a remedy in a different forum — of that, I shall intimate no judgement. A majority of the court is satisfied to adhere to the decision below, and, therefore, refuse the motion to reverse it.
Richardson, O’Neall, Wardlaw and Frost, JJ. concurred.